UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                          :        Chapter 11
                                                :
        MÇTIOM, INC.,                           :        Case No. 01-12840 (RLB)
                                                :
                Debtor.                         :
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF
## JOINT PLAN OF LIQUIDATION OF MÇTIOM, INC.

Lee S. Attanasio (LA-3054)                      Andrew I. Silfen (AS-1264)
Lance A. Schildkraut (LS-9350)                  Schuyler G. Carroll (SC-0100)
SIDLEY AUSTIN BROWN & WOOD                       OLSHAN GRUNDMAN FROME
875 Third Avenue                                     ROSENZWEIG & WOLOSKY LLP
New York, New York  10022                       505 Park Avenue
(212) 906-2000                                  New York, NY  10022
                                                (212) 753-7200
Guy S. Neal
SIDLEY AUSTIN BROWN & WOOD LLP                   Attorneys for Official Committee of
1501 K Street, N.W.                                 Unsecured Creditors
Washington, D.C.  20005
(202) 736-8000

Attorneys for Debtor and Debtor-in-Possession

## TABLE OF CONTENTS

Page(s)

I.    BACKGROUND ...................................................................................................3

   A.    Description of the Debtor's Business...........................................................................3

   B.    Events Leading to Chapter 11 Filing...........................................................................5

   C.    Pre-Petition Efforts to Sell the Business ...................................................................6

   D.    The Plan.......................................................................................................................6

II.   DISCUSSION ......................................................................................................7

   A.    The Plan Satisfies the Requirements for Confirmation Under Section 1129(a)
       and (b) of the Bankruptcy Code ...............................................................................7

       1.    The Plan Complies with the Applicable Provisions of Title 11 Under
           Section 1129(a)(1) of the Bankruptcy Code.....................................................8

            a)    The Plan Complies with the Classification Requirements for
                Claims and Interest Under Section 1122(a) of the
                Bankruptcy Code........................................................................................8

            b)    The Plan Complies with the  Requirements Set Forth in
                Sections 1123(a)(1)-(7) of the Bankruptcy Code Regarding
                the Mandatorry Contents of a Plan.................................................10

            c)    The Plan Complies with the Requirements Set Forth in Section
                1123(b) of the Bankruptcy Code Regarding the Permissive
                Contents of a Plan .......................................................................14

                (i)    The Provisions of the Plan Regarding the Impairment
                    of Claims Comply with Section 1123(b)(1) of the
                    Bankruptcy Code ................................................. 15

                (ii)    The Provisions of the Plan Regarding the Assumption
                    and Assignment of Executory Contracts and Unexpired
                    Leases Comply with Section 1123(b)(2) of the
                    Bankruptcy Code ................................................. 16

                  (iii)    The Provisions of the Plan Regarding the
                    Enforcement of Causes of Action Comply with
                    Section 1123(b)(3)(B) of the Bankruptcy Code  . 17

           2.    The Proponents of the Plan Have Complied with Section 1129(a)(2) of
            the Bankruptcy Code and Have Appropriately Solicited Votes in
            Respect of the Plan ....................................................................................17

i

3.       The Plan Has Been Proposed in Good Faith and Complies with Section 1129(a)(3) of the Bankruptcy Code...............................................................20

4.       The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code Regarding Payment of Professional Fees  ...................................................24

5.       The Plan Complies with the Disclosure Requirements of Section 1129(a)(5) of the Bankruptcy Code Regarding Post-Confirmation Management...........................................................................26

6.       The Plan Does Not Provide for Any Rate Change Subject to Regulatory Approval Under Section 1129(a)(6) of the Bankruptcy Code...........................................................................26

7.       The Plan is in the Best Interests of Creditors and Complies with the Requirements of Section 1129(a)(7) of the Bankruptcy Code.....................27

8.       The Plan Satisfies Section 1129(a)(8) of the Bankruptcy Code with Respect to All Classes of Claims Other Than Class 5 Interests in the Debtor...........................................................................................29

9.       The Treatment of Administrative Claims, Priority Claims and Priority Tax Claims Under the Plan Complies with Section 1129(a)(9) of the Bankruptcy Code.............................................................................30

10.      The Plan Has Been Accepted By at Least One Impaired Class and Satisfies the Requirements of Section 1129(a)(10) of the Bankruptcy Code.............................................................................32

11.      The Plan is Feasible and Complies with the Requirements of Section 1129(a)(11) of the Bankruptcy Code...................................................32

12.      The Plan Provides for the Payment of All Statutory Fees and Complies with Section 1129(a)(12) of the Bankruptcy Code.......................34

13.      The Plan Need Not Provide for Continuation of Payment of Any Retiree Benefits Under Section 1129(a)(13) of the Bankruptcy Code.............................................................................34

B.    The Plan Satisfies the Requirements for Cramdown Under Section 1129(b) of the Bankruptcy Code with Respect to Class 5 Interests ...........................................35

1.       The Plan Does Not Discriminate Unfairly Against Class 5 Interests............36

2.       The Plan is Fair and Equitable with Respect to Class 5 Interests .................37

III.   CONCLUSION................................................................................................39

## **TABLE OF AUTHORITIES**

Page(s)

### **Cases**

In re 11, 111, Inc., 117 B.R. 471, (Bankr. D. Minn. 1990)............................................9

In re 203 N. LaSalle St. Ltd. P'ship, 190 B.R. 567 (Bankr. N.D. Ill. 1995), aff'd, 195 B.R. 692
   (N.D. Ill. 1996), aff'd, 126 F.3d 955 (7th Cir. 1997), rev'd on other grounds, 526
   U.S. 434 (1999) ................................................................................................36

In re Abbotts Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986)....................................20

In re Am. Family Enters., 256 B.R. 377 (D. N.J. 2000)...............................24, 27, 30, 33

In re AOV Indus., Inc., 792 F.2d 1140 (D.C. 1986) ......................................................9

In re Aztec Co., 107 B.R. 585 (Bankr. M.D. Tenn. 1989)........................................36, 37

Barnes v. Whelan (In re Barnes), 689 F. 2d 193 (D.C. Cir. 1982)..................................9

In re Best Prods. Co., Inc., 168 B.R. 35 (S.D.N.Y. 1994).............................................27

Brinkley v. Chase Manhattan Mortgage & Realty Trust (In re LeBlanc), 622 F.2d 872 (5th
   Cir. 1980)......................................................................................................10

In re Buttonwood Partners, Ltd., 111 B.R. 57 (Bankr. S.D.N.Y. 1990) ...........................37

In re Cellular Info. Sys., Inc., 171 B.R. 926 (Bankr. S.D.N.Y.) ...............................33, 35

In re Century Glove, Inc., 1993 WL 239489, Civ. A. Nos. 90-400-SLR, 90-401-SLR (D.
   Del. Feb. 10, 1993)22 ...........................................................................................

In re Chapel Gate Apartments, Ltd., 64 B.R. 569 (Bankr. N.D. Tex. 1986)......................24

Chase Manhattan Mortgage & Realty Trust v. Bergman (In re Bergman), 585 F.2d 1171
   (2d Cir. 1978)..................................................................................................33

Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson), 767 F.2d 417 (8th Cir. 1985).................33

Corestates Bank, N.A. v. United Chem. Technologies, Inc., 202 B.R. 33 (E.D. Pa. 1996........7, 21

In re Crowthers McCall Pattern, Inc., 120 B.R. 279 (Bankr. S.D.N.Y. 1990)..................27, 28

In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723 (Bankr. S.D.N.Y. 1992) ...........9, 20, 32

In re Eagle-Picher Indus., Inc., 203 B.R. 256 (S.D. Ohio 1996)....................................24

In re Eddington Thread Mfg. Co., Inc., 181 B.R. 826 (Bankr. E.D. Pa. 1995).............................33

In re Elsinore Shore Assocs., 91 B.R. 238 (Bankr. D.N.J. 1988) ...............................21, 25

Fin. Sec. Assurance, Inc., v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans
    Ltd.P'ship), 116 F.3d 790 (11th Cir. 1997) ........................................................22

In re First Interregional Equity Corp., 218 B.R. 731 (Bankr. D. N.J. 1997)....................................9

In re Freymiller Trucking, Inc., 190 B.R. 913 (Bankr. W.D. Okla. 1996)....................................36

In re Fur Creations By Variale, Ltd., 188 B.R. 754 (Bankr. S.D.N.Y. 1995)............................7, 27

In re Future Energy Corp., 83 B.R. 470 (Bankr. S.D. Ohio 1988)..........................................25, 37

In re Greate Bay Hotel & Casino, Inc., 251 B.R. 213 (Bankr. D.N.J. 2000).............8, 9, 18, 22, 36

Hanson v. First Bank of S.D. N.A., 828 F.2d 1310 (8th Cir. 1987..........................................20, 21

Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe enters., Ltd., II),
    994 F.2d 1160 (5th Cir.), cert. denied, 510 U.S. 992 (1993)........................................7

In re Jandous Elec. Constr. Corp., 115 B.R. 46 (Bankr. S.D.N.Y. 1990) ....................................20

In re Jartran, Inc., 44 B.R. 331 (Bankr. N.D. Ill 1984) ................................................28

In re Jersey City Med. Ctr., 817 F.2d 1055 (3d Cir. 1987) ..............................................9

John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs., 987 F.2d 154
    (3d Cir. 1993).................................................................................35

In re Johns-Manville Corp., 68 B.R. 618 (Bankr. S.D.N.Y. 1986), aff'd in part and rev'd in
    part, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom, Kane v. Johns-Manville Corp
    (In re Johns Manville Corp.), 843 F.2d 636 (2d Cir. 1988)..........................8, 18, 21, 24, 27, 37

Koelbl v. Glessing (In re Koelbl), 751 F.2d 137 (2d Cir. 1984)....................................22

Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship),
    115 F.3d 650 (9th Cir. 1997) ...............................................................35, 37

Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.), 150 F.3d 503 (5th
    Cir. 1998)...................................................................................35

In re Madison Hotel Assocs., 749 F.2d 410 (7th Cir. 1984) ......................................22

In re Martin, 66 B.R. 921 (Bankr. D. Mont. 1986).................................................32

McCormick v. Banc One Leasing Corp. (In re McCormick), 49 F.3d 1524 (11th Cir.
     1995)......................................................................................................21

In re New Valley Corp., 168 B.R. 73 (Bankr. D. N.J. 1994)................................21, 28

In re Northeast Dairy Coop. Fed'n, Inc., 73 B.R. 239 (Bankr. N.D.N.Y. 1987)..........27

In re PPI Enters. (U.S.), Inc., 228 B.R. 339 (Bankr. D. Del. 1998).........................20

Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.), 755 F.2d 1336 (8th Cir. 1985)......33

In re PWS Holding Corp., 228 F.3d 224 (3d Cir. 2000).....................................18, 20

In re Resorts Int'l, Inc., 145 B.R. 412 (Bankr. D. N.J. 1990).................................18

Ronit, Inc. v. Stemson Corp. (In re Block Shim Dev. Co.), 939 F.2d 289
     (5th Cir. 1991)..........................................................................................21

In re S. Indus. Banking Corp., 41 B.R. 606 (Bankr. E.D. Tenn. 1984)......................25

In re S & W Enter., 37 B.R. 153 (Bankr. N.D. Ill. 1984).......................................8

In re SGL Carbon Corp., 200 F. 3d 154 (3d Cir. 1999).........................................20

In re Sound Radio, Inc., 93 B.R. 849 (Bankr. D. N.J. 1988), aff'd in part and remanded in part
on other grounds, 103 B.R. 521 (D. N.J. 1989), aff'd on subsequent appeal, 908 F.2d 964 (3d
Cir.1990...............................................................................................21, 22

Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.), 84 B.R. 167 (B.A.P. 9th Cir. 1988).................23

Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.), 800
     F.2d 581 (6th Cir. 1986) ...........................................................................10

In re Texaco, Inc., 84 B.R. 893 (Bankr. S.D.N.Y. 1988), appeal dismissed, 92 B.R. 38 (S.D.N.Y.
     1988)..................................................................................18, 20, 22, 25

In re The Leslie Fay Cos., Inc., 207 B.R. 764 (Bankr. S.D.N.Y. 1997) ...............20, 21, 22, 27

In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 149-150 (Bankr. S.D.N.Y.
     1984)....................................................................................8, 18, 20, 30

In re Victory Constr. Co., Inc., 42 B.R. 151(Bankr. C.D. Cal. 1984)..........................28

In re Zenith Elecs. Corp., 241 B.R. 92 (Bankr. D. Del. 1999)...................................................21, 35

## Statutes

11 U.S.C. § 1122 ...............................................................................................................................9

11 U.S.C. § 1123(a) .........................................................................................................................11

11 U.S.C. § 1123(a)(1)......................................................................................................................11

11 U.S.C. § 1123(a)(2)......................................................................................................................11

11 U.S.C. § 1123(a)(3)......................................................................................................................11

11 U.S.C. § 1123(a)(4).....................................................................................................................12

11 U.S.C. § 1123(a)(5).....................................................................................................................12

11 U.S.C. § 1123(a)(6).....................................................................................................................14

11 U.S.C. § 1123(a)(7).....................................................................................................................14

11 U.S.C. §§ 1123(b) ......................................................................................................................14

11 U.S.C. §§ 1123 (b)(1)-(2)..................................................................................................15, 16, 17

11 U.S.C. §§ 1123(b)(3)(A)-(B).................................................................................................15, 17

11 U.S.C. §§ 1123(b)(5)-(6)............................................................................................................15

11 U.S.C. § 1125(b) .........................................................................................................................19

11 U.S.C. § 1126(c)..........................................................................................................................30

11 U.S.C. § 1126(f) .....................................................................................................................28, 30

11 U.S.C. § 1126(g) .........................................................................................................................30

11 U.S.C. § 1129(a)(1)........................................................................................................................8

11 U.S.C. § 1129(a)(2)......................................................................................................................18

11 U.S.C. § 1129(a)(3)......................................................................................................................20

11 U.S.C. § 1129(a)(4)......................................................................................................................24

11 U.S.C. § 1129(a)(5)..................................................................................................26

11 U.S.C. § 1129(a)(6)..................................................................................................27

11 U.S.C. § 1129(a)(7)..............................................................................................27, 28

11 U.S.C. § 1129(a)(8)..................................................................................................29

11 U.S.C. § 1129(a)(9)..................................................................................................31

11 U.S.C. § 1129(a)(10)................................................................................................32

11 U.S.C. § 1129(a)(11)................................................................................................33

11 U.S.C. § 1129(a)(12)................................................................................................34

11 U.S.C.§ 1129(a)(13)................................................................................................34

11 U.S.C. § 1129(b)(1).............................................................................................35, 36

11 U.S.C. § 1129(b)(2)..................................................................................................37

11 U.S.C. § 1129(b)(2)(C)............................................................................................38

## **Miscellaneous**

H.R. Rep No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5962, 6368
(1977)..............................................................................................................8, 18

S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912
(1978)..............................................................................................................8, 18

Mçtiom, Inc., a New York corporation and the debtor and debtor-in-possession herein ("Mçtiom" or the "Debtor"), and the Official Committee of Unsecured Creditors (the "Committee") submit this memorandum of law in support of confirmation of the Joint Plan of Liquidation of Mçtiom, Inc. dated October 12, 2001 (as it may be amended or modified, the "Plan")[1].  Notice of, among other things, (a) approval of the disclosure statement with respect to the Plan (the "Disclosure Statement"), (b) the deadline and procedures for voting to accept or reject the Plan, (c) the hearing to consider confirmation of the Plan, and (d) the deadline and procedures for filing objections to confirmation of the Plan was mailed on or before October 19, 2001 to those entities entitled to notice pursuant to the Order dated October 17, 2001, <u>inter alia</u>, approving the disclosure statement and establishing procedures with respect to confirmation of the Plan (the "Disclosure Statement Approval Order").

Among other things, the Solicitation Procedures Order established November 16, 2001 as the date by which (a) all Ballots must be returned in order to be counted to accept or reject the Plan and (b) objections to confirmation were to be filed with the Clerk of the Bankruptcy Court and served upon counsel to the Debtor, counsel to the Committee and the United States Trustee.  Further, the Solicitations Procedure Order scheduled a hearing to consider confirmation of the Plan (the "Confirmation Hearing") for November 20, 2001 (the "Confirmation Hearing Date").

As set forth in the Declaration of Lee Stein Attanasio Certifying the Ballots Accepting or Rejecting the Debtor's Joint Plan of Liquidation dated November 16, 2001,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

creditors in the impaired classes entitled to vote on the Plan have voted overwhelmingly to accept the Plan.

Only one objection to confirmation of the Plan has been filed – by J. Christopher Wagner, the former Chief Executive Officer of Mçtiom, Inc. (the "Wagner Objection").  As set forth below, many of the arguments raised in the Wagner Objection have been addressed by the Debtor and the remainder should be overruled.

As demonstrated below, the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.  Accordingly, the Debtor respectfully requests that this Court enter an Order confirming the Plan.

## I.    BACKGROUND

On May 15, 2001 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The chapter 11 case (the "Case") was necessitated by the continuing operating losses of the Debtor, the Debtor's inability to obtain additional financing for such losses and its inability to arrange for the sale of the Debtor's business as a going concern outside of bankruptcy.  As a result, the Debtor's only viable alternative was a sale of its business or other liquidation of its assets in chapter 11.

### A.    Description of the Debtor's Business

Mçtiom, Inc., a Delaware corporation, was a leading designer, developer and marketer of Internet-based business-to-business electronic commerce solutions.  Mçtiom's principal place of business is currently in New York, New York.  Mçtiom is the direct parent company of three wholly-owned foreign subsidiaries located in Canada, England and Australia, respectively (collectively, the "Foreign Subsidiaries").  None of the Foreign Subsidiaries is a debtor or debtor-in-possession in this Chapter 11 case.  The Debtor intends to dissolve and wind-up the Foreign Subsidiaries in accordance with the applicable laws and regulations governing

2

each of the Foreign Subsidiaries.[2]  Mçtiom, Inc. was founded in November 1996 as Intelisys Electronic Commerce, Inc.  The name of the Debtor was changed effective as of September 1, 2000.

  The Debtor's primary businesses were (i) the provision of software to permit businesses to streamline their procurement or sales process by making it easy for buyers to place orders with a multitude of suppliers by directly accessing such suppliers' electronic catalogs, and for sellers to get access to large numbers of purchasers by making available their supply electronically, and (ii) the provision of software to create business-to-business "e-marketplace" sites where goods, services and information can be obtained by potential customers with respect to a particular business or industry, and the maintenance and servicing of such software.  These businesses are driven by Mçtiom's flagship software product – Mçtiom ConnectTrade™.

  As noted above, the Debtor was founded in late 1996.  From its inception through much of 1998, the Debtor conducted research and began development of its software products. The Debtor's electronic procurement software became available in 1998, and the electronic marketplace software became available in 2000.

  Through December 31, 1999, the Debtor's operating revenue was principally derived from licenses of its Mçtiom ConnectTrade™ procurement software and related maintenance and service contracts.  In 2000, the Debtor also began deriving revenue from the development of electronic marketplaces.  Although the Debtor's revenue from its two primary software products generally increased from fiscal quarter to fiscal quarter, the Debtor incurred significant one-time and recurring costs to develop its technology, to market its products and to

---

[2] On November 20, 2001, the Debtor filed a motion to facilitate such winding up procedures.

recruit and train personnel.  As a consequence, the Debtor has incurred significant and
continuing net operating losses since inception.

In light of its historical net operating losses, the Debtor relied upon private
placement equity financing to fund and support its businesses and operations.  Prior to the
Petition Date, the Debtor raised approximately $160 million in private placement equity
financing.  As of the Petition Date, the Debtor had exhausted the entirety of its private placement
equity financing as well as other sources of funding.

**B.**     **Events Leading to Chapter 11 Filing**

In late 2000, the Debtor was confronted with liquidity problems stemming from
its continued operating losses and the exhaustion of its existing funding sources.  Faced with
these problems, in January 2001 the Debtor sought and obtained an additional series of private
placement equity funding in the aggregate amount of $45 million from existing equity investors.
The $45 million infusion was to occur in three $15 million installments, with the second and
third installments to be funded at the option of the equity investors.  Concurrent with this
infusion, the Debtor undertook a general restructuring of its operations in order to reduce
operational costs.

At the end of March 2001, Mçtiom was informed that its equity investors had
decided not to fund the remaining $30 million of the $45 million infusion.  Absent the additional
$30 million in financing, the Debtor was again confronted with acute liquidity problems and an
inability to fund its ongoing operational losses.  In response, the Debtor began to explore a
number of alternatives, including raising capital from other financing sources, locating a strategic
partner and finding a purchaser for all or substantially all of the Debtor's businesses.  At the
same time, the Debtor undertook a further, and more severe, cut-back on operating costs and

4

expenses, including a significant reduction in employees.  Moreover, the Debtor's senior

management engaged in a concerted effort to reach agreement with certain third parties with

respect to settling and reducing a number of the Debtor's potential and existing liabilities.

Despite exhaustive efforts by the Debtor's Board of Directors and senior

management throughout April 2001, Mçtiom was unable to secure additional financing, to locate

a strategic partner or to sell all or substantially all of the Debtor's assets to a third party.  Faced

with continued unfavorable market conditions for Internet companies generally and no means for

continuing its ongoing operations, the Debtor's Board of Directors and senior management team

determined that an orderly sale and liquidation of the Debtor's assets through a Chapter 11 case

would provide the best means for maximizing the value of the Debtor's estate for the benefit of

the Debtor's creditors and other stakeholders.

## C.    Pre-Petition Efforts to Sell the Business

Less than two weeks prior to the Petition Date, the Debtor's management was

able to negotiate and consummate a sale of assets from Mçtiom and its Australian subsidiary to a

related entity, Mçtiom Australasia Pty Limited ("Mçtiom Australasia"), for $2.6 million (the

"Australian Asset Purchase Transaction").  The majority of the sale proceeds were distributed to

the Debtor for the benefit of the Debtor's estate.  Moreover, in connection with the Australian

Asset Purchase Transaction, the Debtor entered into a stock purchase agreement (the "Australian

Stock Purchase Agreement") pursuant to which the Debtor proposed to sell its 51% interest in

Mçtiom Australasia (the "MAPL Shares") to Westpac Life Insurance Services Limited.  The

Australian Stock Purchase Agreement was subject to Bankruptcy Court approval and is

discussed further below.

### D.    The Plan

The Plan is the end result of extensive negotiations with the Committee.  In addition, the Plan has been overwhelmingly accepted by the Debtor's creditors.  In this case, the Plan is a plan of liquidation pursuant to which (i) as of the Effective Date, all Assets of the Debtor will be transferred to a Creditor Trust, to be managed by a Creditor Trustee (whose identity will be set forth in the Confirmation Order) on behalf of holders of Allowed Claims against the Debtor, (ii) all remaining Assets of the Debtor (including any unsold property, all Bankruptcy Actions and uncollected accounts receivable) will be liquidated or abandoned by the Creditor Trustee, with the proceeds to be distributed in accordance with the Plan, and (iii) the stock of Mçtiom, Inc. will be cancelled and Mçtiom, Inc. will be dissolved.

## II.    DISCUSSION

### A.    The Plan Satisfies the Requirements for Confirmation Under Section 1129(a) and (b) of the Bankruptcy Code

A plan may be confirmed if the requirements for confirmation set forth in section 1129(a) and (b) of the Bankruptcy Code are satisfied.  The proponent of the plan bears the burden of proving compliance with each statutory requirement.  See In re Fur Creations By Varriale, Ltd., 188 B.R. 754, 760 (Bankr. S.D.N.Y. 1995).  Each requirement will be considered below in detail and in sequence.  The standard is a preponderance of the evidence.  Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II), 994 F.2d 1160,1165 (5th Cir.), cert. denied, 510 U.S. 992 (1993) (preponderance of evidence is appropriate standard of proof under § 1129(a) and in a cramdown); Corestates Bank, N.A. v. United Chem. Technologies, Inc., 202 B.R. 33, 45 (E.D. Pa. 1996) (same).  As demonstrated below, the Plan satisfies the requirements of section 1129 (a) and (b) of the Bankruptcy Code and should, therefore, be confirmed.

1.      **The Plan Complies with the Applicable Provisions of Title 11 Under
        Section 1129(a)(1) of the Bankruptcy Code**

Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply "with the

applicable provisions" of the Bankruptcy Code.  11 U.S.C. § 1129(a)(1).  The legislative history

of section 1129(a) explains that this provision incorporates the requirements of sections 1122 and

1123 of the Bankruptcy Code governing the classification of claims and interests and the

contents of a plan.  See H.R. Rep No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N.

5962, 6368 (1977); S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787,

5912 (1978); In re Johns-Manville Corp., 68 B.R. 618, 629-30 (Bankr. S.D.N.Y. 1986) (noting

that confirmation objections under section 1129(a)(1) usually involve the failure of a plan to

conform to either section 1122 or 1123 of the Bankruptcy Code), aff'd in part and rev'd in part,

78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom., Kane v. Johns-Manville Corp. (In re Johns-

Manville Corp.), 843 F.2d 636 (2nd Cir. 1988); In re Toy & Sports Warehouse, Inc., 37 B.R.

141, 149 (Bankr. S.D.N.Y. 1984); see also In re Greate Bay Hotel & Casino, Inc., 251 B.R. 213,

223 (Bankr. D.N.J. 2000) (citing legislative history); In re S&W Enter., 37 B.R. 153, 158 (Bankr.

N.D. Ill. 1984) (finding that section 1129(a)(1) is most directly aimed at requiring compliance

with the Bankruptcy Code regarding classification of claims or interests and plan contents).  As

demonstrated below, the Plan complies fully with the requirements of both sections 1122 and

1123 of the Bankruptcy Code.

a.      **The Plan Complies with the Classification Requirements for Claims
        and Interest Under Section 1122(a) of the Bankruptcy Code**

Section 1122 of the Bankruptcy Code provides as follows:

(a)     Except as provided in subsection (b) of this section, a plan may place a
        claim or an interest in a particular class only if such claim or interest is
        substantially similar to other claims or interests of such class.

7

(b)    A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.  Thus, section 1122 prohibits the inclusion of dissimilar claims in the same class, but does not require that all similar claims be placed in one class.  See In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) ("Courts have found that the Bankruptcy Code only prohibits the identical classification of dissimilar claims.  It does not require that similar classes be grouped together . . . ."); In re Jersey City Med. Ctr., 817 F.2d 1055, 1061 (3d Cir. 1987) ("[W]e agree with the general view which permits the grouping of similar claims in different classes."); In re AOV Indus., Inc., 792 F.2d 1140, 1150 (D.C. 1986) ("Section 1122(a) specifies that only claims which are 'substantially similar' may be placed in the same class.  It does not require that similar claims must be grouped together . . . ."); In re Greate Bay Hotel & Casino, Inc., 251 B.R. at 224 ("Separate classification of similar claims has been found to be permissible where the classification is offered in good faith, does not foster an abuse of the classification system, and promotes the rehabilitative goals of Chapter 11."); In re First Interregional Equity Corp., 218 B.R. 731, 738-39 (Bankr. D.N.J. 1997) (same). Section 1122(a) does not require that all substantially similar claims or interests be placed in the same class, but rather that all claims or interests within a class be substantially similar to one another.  See Barnes v. Whelan (In re Barnes), 689 F.2d 193, 201 (D.C. Cir. 1982); In re 11,111, Inc., 117 B.R. 471, 476 (Bankr. D. Minn. 1990).

Under section 1122 of the Bankruptcy Code, a plan proponent has tremendous flexibility in classifying claims.  Courts are afforded broad discretion in approving a plan proponent's classification scheme and properly consider the specific facts of each case when making such a determination.  See In re Jersey City Med. Ctr., 817 F.2d at 1060-61 ("Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the

8

propriety of plans in light of the facts of each case"); Teamsters Nat'l Freight Indus. Negotiating

Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.), 800 F.2d 581, 586 (6th Cir. 1986)

(noting "broad discretion" courts are given to determine proper classifications); Brinkley v.

Chase Manhattan Mortgage & Realty Trust (In re LeBlanc), 622 F.2d 872, 879 (5th Cir. 1980).

In this case, the classification scheme under the Plan is proper because similar

claims are classified together.  In addition to Administrative Claims and Priority Tax Claims,

which are not required to be classified, the Plan designates four (4) classes of Claims and one (1)

class of Interests.  Article II of the Plan designates the following classes of Claims and Interests:

> Class 1 -- Priority Claims
>
> Class 2 -- Miscellaneous Secured Claims
>
> Class 3 -- Unsecured Claims
>
> Class 4 -- Convenience Claims
>
> Class 5 -- Interests

Moreover, the classifications are proper under section 1122 of the Bankruptcy

Code because each class of Claims and Interests differs in legal nature and/or priority from the

other classes and, therefore, valid legal reasons exist for separately classifying the various classes

of Claims and Interest under the Plan.  Specifically, the separate classification of Class 4 is in

accordance with section 1122(b).  In addition, all Claims within each Class are substantially

similar in rights and priorities to the other Claims in that class.

> **b.    The Plan Complies with the Requirements Set Forth in Sections
> 1123(a)(1)-(7) of the Bankruptcy Code Regarding the Mandatory
> Contents of a Plan**

Section 1123(a) of the Bankruptcy Code sets forth seven requirements for the

contents of a Chapter 11 plan.  Specifically, section 1123(a) requires that a plan:  (i) designate

classes of claims and interests; (ii) specify unimpaired classes of claims and interest; (iii) specify

treatment of impaired classes of claims and interests; (iv) provide for equality of treatment within

each class; (v) provide adequate means for the plan's implementation; (vi) provide for the

prohibition of nonvoting equity securities and provide an appropriate distribution of voting

power among the classes of securities; and (vii) contain only provisions that are consistent with

the interests of the creditors and equity security holders and with public policy with respect to the

manner and selection of the reorganized company's officers and directors.  See 11 U.S.C.

§ 1123(a).  As demonstrated below, the Plan fully complies with each such requirement.

Section 1123(a)(1) of the Bankruptcy Code provides that a plan must "designate,

subject to section 1122 of this title, classes of claims, other than claims of a kind specified in

section 507(a)(1), 507(a)(2), or 507(a)(8) of this title, and classes of interests."  11 U.S.C. §

1123(a)(1).  Article II of the Plan designates five Classes of Claims and Interests, other than

those specified in Sections 503(b) and 507(a)(1) and (8) of the Bankruptcy Code (Administrative

Claims and Priority Tax Claims are not classified and are treated separately in Article II of the

Plan).  Thus, the Plan complies with section 1123(a)(1) of the Bankruptcy Code.

Section 1123(a)(2) of the Bankruptcy Code requires that a plan "specify any class

of claims or interests that is not impaired under the plan."  11 U.S.C. § 1123(a)(2).  Article II of

the Plan specifies the Classes of Claims and Interests that are not impaired under the Plan (i.e.,

Classes 1 and 2).  Thus, the Plan complies with section 1123(a)(2) of the Bankruptcy Code.

Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the

treatment of any class of claims or interests that is impaired under the plan."  11 U.S.C. §

1123(a)(3).  Article II of the Plan specifies the treatment of Classes of Claims and Interests that

are impaired under the Plan (i.e., Classes 3, 4 and 5).  Thus, the Plan complies with section 1123(a)(3) of the Bankruptcy Code.

Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  11 U.S.C. § 1123(a)(4).  As reflected in Article II, the Plan provides the same treatment for each Claim or Interest in a particular class and thus satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

Section 1123(a)(5) of the Bankruptcy Code requires that a plan "provide adequate means for the plan's implementation" and lists certain examples, such as sales of the debtor's property, cancellation or modification of any indenture, extension of a maturity date or change in interest rate or other term of outstanding securities, amendment of the debtor's charter and issuance of new securities.  See 11 U.S.C. § 1123(a)(5).  On the Effective Date, the Plan will be implemented as set forth in Article VI of the Plan.  In particular, the Plan provides for:  (a) the creation of a Plan Oversight Committee which (i) shall have overall direction and control of the liquidation of the Debtor's Estate and the prosecution of claims pursuant to the Plan and the terms of the Creditor Trustee Agreement, and (ii) shall direct, oversee and control all of the activities of the Creditor Trustee and perform such other duties as provided in the Plan and the Creditor Trust Agreement (Section VI.C of the Plan); (b) the selection of a Creditor Trustee to establish the reserves contemplated by the Plan, to complete the sale, collection or liquidation of the Assets and the Bankruptcy Actions, to make the distributions contemplated by the Plan and to perform such other duties as provided in the Plan and Creditor Trust Agreement including, among other things, the investigation, prosecution and, if necessary, litigation, of any claims or

causes of action constituting Assets and any Bankruptcy Actions on behalf of the Debtor

(Section VI.D of the Plan); (c) the establishment of an Administrative and Priority Reserve

which will be funded with Cash, up to the Administrative and Priority Reserve Amount obtained

from Cash on Hand, to be held for the benefit of each holder of an Allowed Administrative

Claim, an Allowed Priority Claim and an Allowed Priority Tax Claim (Section VI.B of the Plan);

(d) the establishment of a Class 3 Reserve which shall be funded with Cash on Hand after the

establishment of the Administrative and Priority Reserve and the Creditor Trust Initial Funding

Amount and the payment of Allowed Class 4 Claims, to be held for the benefit of each holder of

an Allowed Class 3 Claim with distributions to be made to the holders of Allowed Class 3

Claims on the Initial Distribution Date and on any additional distribution date selected by the

Creditor Trustee (Section VI.B.2 of the Plan); (e) the establishment of a Creditor Trust Reserve

(Section VI.B.3 of the Plan); (f) the transfer to the Creditor Trust of all Bankruptcy Actions

(Section V.A of the Plan) and all rights or causes of action under any theory of law accruing to

the Debtor and that are part of the Assets (Section V.B of the Plan); (g) the cancellation of all of

the outstanding capital stock of the Debtor (Section VI.H of the Plan); and (h) procedures under

which Distributions will be made on account of Allowed Claims (Article VII of the Plan). Thus,

the Plan provides adequate means for its implementation, thereby satisfying section 1123(a)(5)

of the Bankruptcy Code.

Section 1123(a)(6) of the Bankruptcy Code requires that a plan:

provide for the inclusion in the charter of the debtor, if the debtor
is a corporation . . ., a provision prohibiting the issuance of
nonvoting equity securities, and providing, as to the several classes
of securities possessing voting power, an appropriate distribution
of such power among such classes, including, in the case of any
class of equity securities having a preference over another class of
equity securities with respect to dividends, adequate provisions for

the election of directors representing such preferred class in the
event of default in the payment of such dividends.

11 U.S.C. §1123(a)(6).  Section 1123(a)(6) is not applicable in this case because the Debtor is

liquidating.  Specifically, the Plan calls for the transfer of the Debtor's Assets to a Creditor Trust,

which Assets will be liquidated and distributed to the holders of Allowed Class 3 Claims, after

which Mçtiom, Inc. will be dissolved.

Section 1123(a)(7) of the Bankruptcy Code provides that a plan shall "contain

only provisions that are consistent with the interests of creditors and equity security holders and

with public policy with respect to the manner of selection of any officer, director, or trustee

under the plan and any successor to such officer, director, or trustee."  11 U.S.C. § 1123(a)(7).

The provisions of the Plan regarding the selection of the Creditor Trustee are consistent with the

interests of Creditors and with public policy, and satisfy the requirements of section 1123(a)(7)

of the Bankruptcy Code.  The Creditor Trust Agreement is to be approved in connection with

confirmation of the Plan.  Further, the Committee has appointed Telstra Corporation Limited,

Lloyd O'Connor and PGI, Inc. to serve on the Plan Oversight Committee, and has appointed

Bernard Katz to serve as the Creditor Trustee.  These appointments will be approved in

connection with confirmation of the Plan.  Accordingly, the Debtor submits that the provisions of

the Plan relating to the manner and selection of the Creditor Trustee and Plan Oversight

Committee satisfy the requirements of section 1123(a)(7) of the Bankruptcy Code.

    **c.**    **The Plan Complies with the Requirements Set Forth in Section
1123(b) of the Bankruptcy Code Regarding the Permissive Contents
of a Plan**

Section 1123(b) of the Bankruptcy Code sets forth various provisions that may be

included in a plan but are not required.  See 11 U.S.C. § 1123(b).  For example, a plan may

impair or leave unimpaired any class of claims or interests and provide for the assumption or

rejection of executory contracts and unexpired leases.  11 U.S.C. § 1123(b)(1)-(2).  A plan may

also provide for "the retention and enforcement by the debtor, by the trustee, or by a

representative of the estate appointed for such purpose, of any such claim or interest."  11 U.S.C.

§ 1123(b)(3)(A)-(B).  Finally, a plan may "modify the rights of holders of secured claims . . . or .

. . unsecured claims, or leave unaffected the rights of holders of any class of claims" and may

"include any other appropriate provision not inconsistent with the applicable provisions of [title

11]."  11 U.S.C. § 1123(b)(5)-(6).

   The Debtor submits that the following provisions of the Plan, which are discussed

in more detail below, are permitted by section 1123(b) of the Bankruptcy Code:  (i) the

impairment and unimpairment of Classes of Claims and Interests (section 1123(b)(1) of the

Bankruptcy Code); (ii) the assumption or rejection of Executory Contracts and Unexpired Leases

(section 1123(b)(2) of the Bankruptcy Code); and (iii) the transfer to the Creditor Trustee, as the

Estate's representative, of the Causes of Action (section 1123(b)(3)(B) of the Bankruptcy Code).

Other provisions of the Plan are also permissible pursuant to the authority granted in

section 1123(b)(6) of the Bankruptcy Code, which permits a plan to include other provisions not

inconsistent with the applicable provisions of title 11 including the injunctive provisions of the

Plan (Section X.B of the Plan), the retention of jurisdiction provisions and other administrative

provisions of the Plan (Section X.A of the Plan).

   **i. The Provisions of the Plan Regarding the Impairment
of Claims Comply with Section 1123(b)(1) of the Bankruptcy
Code**

   Section 1123(b)(1) of the Bankruptcy Code states that a plan may "impair or

leave unimpaired any class of claims, secured or unsecured, or of interests."  11 U.S.C. §

14

1123(b)(1).  As discussed above, Article II of the Plan provides for the impairment of Claims in

Classes 3 and 4 and Interests in Class 5, and leaves unimpaired the Claims in Classes 1 and 2.

> **ii.      The Provisions of the Plan Regarding the Assumption
> and Assignment of Executory Contracts and Unexpired
> Leases Comply with Section 1123(b)(2) of the Bankruptcy
> Code**

Section 1123(b)(2) of the Bankruptcy Code provides that "subject to section 365

of [the Bankruptcy Code,] a plan may provide for the assumption, rejection, or assignment of any

executory contract or unexpired lease of the debtor not previously rejected under such section."

11 U.S.C. § 1123(b)(2).  Article III of the Plan provides for the assumption or rejection of

executory contracts and unexpired leases to which the Debtor is a party.  Section III.A of the

Plan provides that "[o]n the Effective Date, each executory contract and unexpired lease entered

into by the Debtor prior to the Petition Date shall be rejected pursuant to section 365 of the

Bankruptcy Code, except for any executory contract or unexpired lease (i) that was previously

assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the

Bankruptcy Code, (ii) that is the subject of a pending motion to assume or reject as of the

Confirmation Date (including a motion seeking approval of a transaction that includes the

assumption and assignment of any executory contract or unexpired lease), (iii) that has

previously expired or terminated pursuant to its own terms, or (iv) that the Debtor includes on a

schedule of assumed executory contracts and unexpired leases to be filed as part of the Plan

Supplement."  In addition, Section III.C of the Plan provides that "[a]ll executory contracts or

unexpired leases of the Debtor that are acquired by a purchaser pursuant to a transaction that has

not been consummated before the Confirmation Date, and all executory contracts and unexpired

leases included in the schedule described in clause (iv) of Section III.A, shall be deemed

assumed by the Debtor, and assigned if applicable to the relevant purchaser in accordance with

sections 365 and 1123 of the Bankruptcy Code, as of the Effective Date." Section III.C.2 of the

Plan specifies the terms by which any monetary defaults under each executory contract and

unexpired lease to be assumed or assumed and assigned pursuant to the Plan will be satisfied.

Section III.B of the Plan establishes a Bar Date for parties to rejected executory contracts and

leases to file proofs of claim and requests for payment of administrative expenses with respect to

Claims arising from the rejection of executory contracts or unexpired leases rejected on or after

the Confirmation Date.

   The Debtor submits that its decisions regarding the assumption or rejection of

executory contracts and unexpired leases are authorized by section 1123(b)(2) of the Bankruptcy

Code, are reasonable exercises of sound business judgment and are in the best interests of the

Debtor and its Estate.

  **iii.** **The Provisions of the Plan Regarding the Enforcement
of Causes of Action Comply with Section 1123(b)(3)(B)
of the Bankruptcy Code**

   Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan may provide

for "the retention and enforcement by the debtor, by the trustee, or by a representative of the

estate appointed for such purpose, of any such claim or interest." 11 U.S.C. § 1123(b)(3)(B). In

accordance with section 1123(b)(3)(B), the Plan provides for the transfer to the Creditor Trust of

all Bankruptcy Actions and all rights or causes of action under any theory of law accruing to the

Debtor and that are part of the Assets. (See Article V of the Plan.)

  **2.** **The Proponents of the Plan Have Complied with Section 1129(a)(2) of
the Bankruptcy Code and Have Appropriately Solicited Votes in
Respect of the Plan**

   Section 1129(a)(2) of the Bankruptcy Code requires that a plan proponent

"compl[y] with the applicable provisions of [title 11]." The legislative history of section

1129(a)(2) reveals that the principal purpose of this section is to ensure compliance with the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code.  See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure"); In re Texaco Inc., 84 B.R. 893, 906-907 (Bankr. S.D.N.Y. 1988) (holding that the "principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of section 1125 in the solicitation of acceptances to the plan"), appeal dismissed, 92 B.R. 38 (S.D.N.Y. 1988); In re Johns-Manville Corp., 68 B.R. at 630; In re Toy & Sports Warehouse, Inc., 37 B.R. at 149 ("[Section] 1129(a)(2) requires that the proponent of the plan must comply with . . . the ban on post-petition solicitation of the plan unaccompanied by a written disclosure statement approved by the court in accordance with [Bankruptcy] Code §§ 1125 and 1126."); see also In re PWS Holding Corp., 228 F.3d 224, 248 (3d Cir. 2000) (agreeing with the District Court that section 1129(a)(2) "requires that the plan proponent comply with the adequate disclosure requirements of § 1125."); In re Greate Bay Hotel & Casino, Inc., 251 B.R. at 234 (noting that the legislative history of section 1129(a)(2) makes special mention of compliance with the disclosure requirements mandated in section 1125 of the Bankruptcy Code); In re Resorts Int'l, Inc., 145 B.R. 412, 468-69 (Bankr. D.N.J. 1990) (section 1129(a)(2) was satisfied when proponent of plan complied with requirements of section 1125).  The Debtor has complied with the applicable provisions of title 11, including the provisions of section 1125 regarding disclosure and plan solicitation.

Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan,

and a written disclosure statement approved . . . by the court as containing adequate

information." 11 U.S.C. § 1125(b). In this case, the Court approved the Disclosure Statement by

an Order dated October 17, 2001 in which the Court specifically found, among other things, that

the Disclosure Statement contained adequate information within the meaning of section 1125 of

the Bankruptcy Code. In addition, the Court considered and, in the Disclosure Statement

Approval Order, approved (a) all materials to be transmitted to those creditors entitled to vote on

the Plan (collectively, the "Solicitation Materials"), (b) the timing and method of delivery of the

Solicitation Materials, and (c) the rules for tabulating votes to accept or reject the Plan.

Thereafter, the Debtor transmitted solicitation packages to holders of Claims and

Interests and other parties in interest, which contained (a) for impaired creditors, the Disclosure

Statement and the Plan, (b) a Confirmation Hearing Notice, and (c) for parties entitled to vote on

the Plan, an appropriate Ballot. These Solicitation Materials were distributed on or before

October 19, 2001 as required under the Disclosure Statement Approval Order. Following the

distribution of the Solicitation Materials, all Classes entitled to vote accepted the Plan, as

indicated in the Declaration of Lee Stein Attanasio Certifying the Ballots Accepting or Rejecting

the Debtor's Joint Plan of Liquidation dated November 16, 2001.

The Debtor has properly solicited votes with respect to the Plan in compliance

with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, as well as the

Disclosure Statement Approval Order. Good, sufficient and timely notice of the Confirmation

Hearing has been given to all holders of Claims and Interests and all other parties in interest to

whom notice was required to have been given in accordance with the Disclosure Statement

Approval Order. Affidavits of service regarding distribution of the Disclosure Statement have

been filed with the Court. All of the Ballots of holders of Claims were properly solicited and

tabulated.  Accordingly, the Debtor has complied with the applicable provisions of title 11,

including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

Therefore, the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

See, e.g., In re Drexel Burnham Lambert Group, Inc., 138 B.R. at 769 (section 1129(a)(2) is

satisfied where debtors complied with all provisions of the Bankruptcy Code and Bankruptcy

Rules governing notice, disclosure and solicitation relating to the plan).

### 3.   The Plan Has Been Proposed in Good Faith and Complies with Section 1129(a)(3) of the Bankruptcy Code

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in

good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3); see also In re

Jandous Elec. Constr. Corp., 115 B.R. 46, 51 (Bankr. S.D.N.Y. 1990).  Although the term "good

faith" is not defined in the Bankruptcy Code, a plan is considered to have been proposed in good

faith "if there is a reasonably likelihood that the plan will achieve a result consistent with the

standards prescribed under the [Bankruptcy] Code."  In re The Leslie Fay Cos., Inc., 207 B.R.

764, 781 (Bankr. S.D.N.Y. 1997) (quotations omitted); In re Texaco, Inc., 84 B.R. at 907; see

also Hanson v. First Bank of S.D., N.A., 828 F.2d 1310, 1315 (8th Cir. 1987) (quotations

omitted); In re PWS Holding Corp., 228 F.3d at 242 ("[F]or purposes of determining good faith

under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a

plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy

Code.") (quoting In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 150 n.5 (3d Cir. 1986)); In re

SGL Carbon Corp., 200 F.3d 154, 165 (3d Cir. 1999) (the good faith standard in section

1129(a)(3) requires that there must be "some relation" between the Chapter 11 plan and the

"reorganization-related purposes" that Chapter 11 was designed to serve); In re PPI Enters.

(U.S.), Inc., 228 B.R. 339, 347 (Bankr. D. Del. 1998) (quoting In re Toy & Sports Warehouse,

<u>Inc.</u>, 37 B.R. at 149); <u>In re New Valley Corp.</u>, 168 B.R. 73, 80 (Bankr. D.N.J. 1994) ("It is

generally held that a plan is proposed in good faith if there is a reasonable likelihood that the

plan will achieve a result consistent with the objective and purpose of the Bankruptcy Code."); <u>In</u>

<u>re Elsinore Shore Assocs.</u>, 91 B.R. 238, 260 (Bankr. D.N.J. 1988).

   The good faith standard has been defined as requiring a showing that the plan was

proposed with honesty and good intentions and with a basis for expecting that a reorganization

can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.

<u>In re Johns-Manville Corp.</u>, 843 F.2d at 649; <u>Hanson v. First Bank of South Dakota, N.A.</u>, 828

F.2d at 1315; <u>In re Zenith Elecs. Corp.</u>, 241 B.R. 92, 107 (Bankr. D. Del. 1999) ("The good faith

standard requires that the plan be proposed with honesty, good intentions and a basis for

expecting that a reorganization can be effected with results consistent with the objectives and

purposes of the Bankruptcy Code.") (citations omitted); <u>In re Sound Radio, Inc.</u>, 93 B.R. 849,

853 (Bankr. D.N.J. 1988), <u>aff'd</u> <u>in</u> <u>part</u> <u>and</u> <u>remanded</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u>, 103 B.R. 521

(D.N.J. 1989), <u>aff'd</u> <u>on</u> <u>subsequent</u> <u>appeal</u>, 908 F.2d 964 (3d Cir. 1990).

   The good faith inquiry must be viewed in light of the totality of the circumstances

surrounding the establishment of a chapter 11 plan.  <u>In re The Leslie Fay Cos.</u>, 207 B.R. at 781

(citations omitted); <u>see</u> <u>also</u> <u>McCormick v. Banc One Leasing Corp., U.S. Trustee (In re</u>

<u>McCormick)</u>, 49 F.3d 1524, 1526 (11th Cir. 1995) ("The focus of a court's inquiry is the plan

itself, and courts must look to the totality of the circumstances surrounding the plan, . . . keeping

in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make

a fresh start."), <u>Ronit, Inc. v. Stemson Corp. (In re Block Shim Dev. Co.-Irving)</u>, 939 F.2d 289,

292 (5th Cir. 1991) (same); <u>Corestates Bank, N.A. v. United Chem. Technologies, Inc.</u>, 202 B.R.

at 57 (concluding that courts must view good faith by looking at the totality of the

circumstances).  "Totality of the circumstances" may also include a debtors' pre-petition conduct

in addition to a review of the plan.  In re The Leslie Fay Cos., 207 B.R. at 781 (citations

omitted).

In determining whether the plan will succeed and accomplish goals consistent

with the Bankruptcy Code, courts look to the terms of the reorganization plan itself.  See In re

Sound Radio, Inc., 93 B.R. at 853 (concluding that the good faith test provides the court with

significant flexibility and is focused on an examination of the plan itself, rather than other,

external factors).  "According to the good faith requirement of section 1129(a)(3), the court looks

to the debtor's plan and determines, in light of the particular facts and circumstances, whether

the plan will fairly achieve a result consistent with the Bankruptcy Code."  In re Texaco, Inc., 84

B.R. at 907 (citing In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir. 1984)).  The plan

proponent must show, therefore, that the plan has not been proposed by any means forbidden by

law and that the plan has a reasonable likelihood of success.  See Koelbl v. Glessing (In re

Koelbl), 751 F.2d 137, 139 (2d Cir. 1984) (noting that plan provisions may not contravene any

law, including state law, and a plan must have been proposed with "a basis for expecting that a

reorganization can be effected"); see also Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd.

P'ship (In re T-H New Orleans Ltd. P'ship), 116 F.3d 790, 802 (11th Cir. 1997); In re Greate Bay

Hotel & Casino, Inc., 251 B.R. at 238 ("[T]he focus of the good faith requirement is whether the

plan under consideration advances the reorganization objectives of Chapter 11 of the Bankruptcy

Code, in a manner that can be effected and is otherwise supportable."); In re Century Glove, Inc.,

1993 WL 239489, Civ. A. Nos. 90-400-SLR, 90-401-SLR, at *4 (D. Del. Feb. 10, 1993) ("A

court may only confirm a plan of reorganization if . . . 'the plan has been proposed in good faith

and not by any means forbidden by law.'  Moreover, where the plan is proposed with the

legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith

requirement of section 1129(a)(3) is satisfied.") (citations omitted).

       As is evident from the Disclosure Statement and the record in this Case, the

Debtor acted with honesty and good intentions in its dealings with creditors both before and after

the filing of the Case.  Prior to the filing of the Case, the Debtor, with the assistance of its

counsel, completed an extensive review and evaluation of the Debtor's business and pursued

various alternatives to a chapter 11 filing and means to maximize value for creditors.  See

Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.), 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988)

(holding that good faith in proposing a plan "also requires a fundamental fairness in dealing with

one's creditors").  These efforts ultimately lead to the filing of the Case, but only after the Debtor

was able to consummate a sale of assets from Mçtiom and its Australian subsidiary to a related

entity, Mçtiom Australasia Pty Limited, and with the intention of maximizing the value of the

Debtor's remaining assets for distribution to its Creditors.

       The Plan is the product of intense negotiations between the Debtor and the

Committee regarding the best means of maximizing the value of the Debtor's Estate and the

available return to Creditors.  These negotiations addressed, among other things, (a)  the

treatment of Claims and Interests, (b) the type and amount of consideration to be distributed

under the Plan, (c) the means of implementing the Plan, i.e., the governance of the Creditor Trust

, (d) the value of the Assets, and (e) other specific provisions of the Plan.  As a consequence of

these negotiations, a joint plan was ultimately formulated, finalized, and filed with the Court by

both the Debtor and the Committee.

       The support of the Committee and the overwhelming acceptance of the Plan by

voting creditors reflect the overall fairness of the Plan and an acknowledgment that the Plan has

been proposed in good faith and for proper purposes.  See In re Am. Family Enters., 256 B.R.

377, 401 (D.N.J. 2000) (finding that the plan at issue was fundamentally fair and proposed in

good faith; noting that the evidence in the record reflected the fact that the debtors expeditiously

had negotiated resolutions of their differences with the creditors' committee and other

constituencies, which settlements were incorporated into the plan); In re Eagle-Picher Indus.,

Inc., 203 B.R. 256, 274 (S.D. Ohio, 1996) (finding that a plan of reorganization was proposed in

good faith when, among other things, it was based on extensive arms' length negotiations among

the plan proponents and other parties in interest).

Accordingly, the Plan has been proposed in good faith and not by any means

forbidden by law, as demonstrated by, among other things, the totality of the circumstances

surrounding the formulation of the Plan, the record of the Case, and by the recoveries of holders

of Claims under the Plan.  Therefore, the Plan satisfies the requirements of section 1129(a)(3) of

the Bankruptcy Code.

### 4.    The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code Regarding Payment of Professional Fees

Section 1129(a)(4) of the Bankruptcy Code requires that:

> Any payment made or to be made by the proponent, by the debtor,
> or by a person issuing securities or acquiring property under the
> plan, for services or for costs and expenses in or in connection with
> the case, or in connection with the plan and incident to the case,
> has been approved by, or is subject to the approval of, the court as
> reasonable.

11 U.S.C. § 1129(a)(4).  In essence, this provision requires that any and all fees promised or

received in connection with or in contemplation of a Chapter 11 case must be disclosed and

subject to the court's review.  See In re Johns-Manville, 68 B.R. at 632 (concluding that the court

must be permitted to review and approve reasonableness of professional fees made from estate

assets); In re Chapel Gate Apartments, Ltd., 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (before a

plan may be confirmed, "there must be a provision for review by the Court of any professional

compensation"); In re S. Indus. Banking Corp., 41 B.R. 606, 612 (Bankr. E.D. Tenn. 1984) (even

absent challenge, a court has an independent duty to determine the reasonableness of

professional fees).  As one court has noted, because claims for compensation for professional

services rendered in a chapter 11 case are entitled to priority ahead of unsecured claims, "section

1129(a)(4) protects the integrity of the reorganization process by assuring creditors that

payments from the debtor's estate will be subject to court review."  In re Future Energy Corp.,

83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) (internal quotations omitted).

   Section II.A.1.b of the Plan expressly provides that no Professional Fee Claim

shall be Allowed unless:  (i) the holder of such Professional Fee Claim timely files a fee

application with the Bankruptcy Court so that it is received no later than thirty (30) days after the

Effective Date; and (ii) the Bankruptcy Court enters a Final Order allowing such Professional

Fee Claim.  Thus, final payments for pre-Confirmation Date unpaid fees, costs or expenses to

Professionals will not be made unless and until the Debtor is authorized to do so by order of the

Bankruptcy Court.  Moreover, Section IX.A.11 of the Plan provides that the Court will retain

jurisdiction "to hear and determine all applications for compensation and reimbursement of

expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code for

services rendered and expenses incurred prior to the Confirmation Date, and all applications for

compensation of the Creditor Trustee, and, to the extent requested by the Creditor Trustee, for

disbursements from the Administrative and Priority Reserve, the Class 3 Reserve or the Creditor

Trust Reserve."  Therefore, the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

See, e.g., In re Texaco, Inc., 84 B.R. at 908 (as long as fees, costs and expenses are subject to

final approval of the Court, section 1129(a)(4) is satisfied); In re Elsinore Shore Assocs., 91 B.R.

at 268 (holding that requirements of section 1129(a)(4) were satisfied where the plan provided

for payment of only "allowed" administrative expenses).

### 5. The Plan Complies with the Disclosure Requirements of Section 1129(a)(5) of the Bankruptcy Code Regarding Post-Confirmation Management

Section 1129(a)(5) of the Bankruptcy Code requires that (i) the plan proponent

disclose the identity and affiliations of the proposed officers and directors of the reorganized

debtor or any successor to the debtor, (ii) the appointment of such officers and directors be

consistent with the interests of creditors and security holders and with public policy, and (iii) the

plan proponent disclose the identity and compensation of any insiders to be retained or employed

by the reorganized debtor. See 11 U.S.C. § 1129(a)(5).

Because the Debtor is liquidating, there will be no officers or directors who will

serve after confirmation of the Plan. As set forth in Article VI of the Plan, the Creditor Trustee

and Plan Oversight Committee shall execute the Creditor Trust Agreement, all Assets of the

Debtor will be transferred to the Creditor Trust, and the Plan Oversight Committee shall

implement the Plan and distributions thereunder. The Committee has appointed Telstra

Corporation Limited, Lloyd O'Connor and PGI, Inc. to serve on the Plan Oversight Committee,

and has appointed Bernard Katz to serve as the Creditor Trustee, all of whose identities are

disclosed in the Confirmation Order. These parties are representatives of the creditors, appointed

by the Committee acting in its fiduciary duty to all creditors. Therefore, the Plan satisfies the

requirements of section 1129(a)(5) of the Bankruptcy Code.

### 6. The Plan Does Not Provide for Any Rate Change Subject to Regulatory Approval Under Section 1129(a)(6) of the Bankruptcy Code

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory

commission having jurisdiction over the rates charged by the reorganized debtor in the operation

of its business approve any rate change provided for in the plan.  In this case, the Plan does not

provide for any changes in the rates that require regulatory approval by any governmental

agency.  Therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable to the Plan.

**7.      The Plan is in the Best Interests of Creditors and Complies with the
Requirements of Section 1129(a)(7) of the Bankruptcy Code**

Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the "best

interests" of creditors and interest holders.  See 11 U.S.C. § 1129(a)(7).  Specifically, section

1129(a)(7) provides as follows:

With respect to each impaired class of claims or interests —

(A)      each holder of a claim or interest of such class —

     (i)      has accepted the plan; or

     (ii)      will receive or retain under the plan on account of
such claim or interest property of a value, as of the
effective date of the plan, that is not less than the
amount that such holder would so receive or retain
if the debtor were liquidated under chapter 7 of this
title on such date . . . .

11 U.S.C. § 1129(a)(7).  Thus, the best interests of creditors test requires that, with respect to

each impaired class of claims or interests, each holder of such a claim or interest has accepted the

plan or will receive property of a value not less than what such holder would receive if the debtor

were liquidated under Chapter 7 of the Bankruptcy Code.  See In re Johns-Manville Corp., 843

F.2d at 649; In re The Leslie Fay Cos., Inc., 207 B.R. at 787; In re Fur Creations By Varriale,

Ltd., 188 B.R. at 759; In re Best Prods. Co., Inc., 168 B.R. 35, 72 (S.D.N.Y. 1994); In re

Crowthers McCall Pattern, Inc., 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990); see also In re Am.

Family Enters., 256 B.R. at 403 (finding debtors' burden of proof under section 1129(a)(7) met

where debtors showed that creditors would receive at least as much under the plan as they would

receive in a liquidation of the debtors' assets under Chapter 7); In re Northeast Dairy Coop.

26

Fed'n, Inc., 73 B.R. 239, 253 (Bankr. N.D.N.Y. 1987); In re Victory Constr. Co., Inc., 42 B.R.

145, 151 (Bankr. C.D. Cal. 1984).  A court, in considering whether a plan is in the "best

interests" of creditors, is not required to consider any alternative to the plan other than the

dividend projected in a liquidation of all of the debtor's assets under Chapter 7 of the Bankruptcy

Code.  See In re Crowthers McCall Pattern, Inc., 120 B.R. at 297; In re Jartran, Inc., 44 B.R. 331,

389-93 (Bankr. N.D. Ill. 1984) (best interests test satisfied by showing that, upon liquidation, the

cash received would be insufficient to pay priority claims and secured creditors so that unsecured

creditors and stockholders would receive no recovery); In re Victory Constr. Co., Inc., 42 B.R. at

151.

        As section 1129(a)(7) makes clear, the best interests of creditors test only applies

to nonaccepting holders of impaired claims and interests.  See 11 U.S.C. § 1129(a)(7); see also In

re New Valley Corp., 168 B.R. at 79 (a plain and sensible reading of section 1129(a)(7)(A)(ii)

yields the conclusion that an unimpaired class is not protected by the best interest of creditors

test).  Thus, section 1129(a)(7) does not apply to Classes 1 and 2 because each of these Classes is

unimpaired.

        As to the holders of Claims and Interests in impaired Classes (i.e., Claims in

Classes 3 and 4 and Interests in Class 5), the best interests of creditors test is satisfied.  As set

forth in detail in Section III.C of the Disclosure Statement, the Plan complies with section

1129(a)(7) since the Plan contemplates an expeditious liquidation of the Debtor's assets and the

prompt distribution of the sale proceeds in accordance with the priorities of Claims under the

Bankruptcy Code.  A liquidation under Chapter 7 would not increase the assets available for

distribution to creditors.  Instead, a liquidation under Chapter 7 would most likely dramatically

reduce distributions to creditors.  First, if the Case were converted to a Chapter 7 liquidation

case, a trustee would be appointed, along with certain professionals to assist the trustee, to administer the Chapter 7 liquidation. The trustee and its professionals would need to expend significant resources to "get up to speed" in the Case, when the Creditor Trustee (one of the Committee's Professionals) and the Plan Oversight Committee (constituted with the same members as the Committee) have already spent six months familiarizing themselves with the Debtor's Assets (including potential Bankruptcy Actions) and Claims against the Debtor, including potential objections thereto. The insertion at this late stage of the liquidation would result in substantial additional fees and expenses to be paid out of the Debtor's Estate. Second, the activities of the trustee and its professionals in liquidating the Debtor's Assets and pursuing Claim objections in a chapter 7 case would be wholly duplicative of the efforts already undertaken, initially, by Mçtiom prior to filing this Case and, thereafter, by the Debtor and the Committee during the Case. The Debtor and the Committee do not believe a trustee would be able to generate any additional asset sales that the Debtor has not already or could not through the Creditor Trustee. Consequently, the Debtor believes that the holders of Claims in Classes 3 and 4 will receive significantly greater distributions under the Plan than in a Chapter 7 liquidation and that holders of Interests in Class 5, which will receive no distribution under the Plan, would do no better in a Chapter 7 liquidation. Therefore, the Plan satisfies the best interests of creditors test contained in section 1129(a)(7) of the Bankruptcy Code.

**8.      The Plan Satisfies Section 1129(a)(8) of the Bankruptcy Code with Respect to All Classes of Claims Other Than Class 5 Interests in the Debtor**

Section 1129(a)(8) requires as follows:

With respect to each class of claims or interests —

(A)      such class has accepted the plan; or

(B)      such class is not impaired under the plan.

28

11 U.S.C. § 1129(a)(8).  Acceptance of a plan by an impaired class of claims or interests is

determined by reference to section 1126 of the Bankruptcy Code, which provides as follows:

> (c)  A class of claims has accepted a plan if such plan has been accepted by
> creditors, other than any entity designated under subsection (e) of this section, that
> hold at least two-thirds in amount and more than one-half in number of the
> allowed claims of such class held by creditors, other than any entity designated
> under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).  Section 1126 of the Bankruptcy Code further provides that a class of

claims or interests that is not impaired under a plan is "conclusively presumed" to have accepted

the plan and need not be further examined under section 1129(a)(8) of the Bankruptcy Code.  11

U.S.C. § 1126(f); see also In re Toy & Sports Warehouse, Inc., 37 B.R. at 150; In re Am. Family

Enters., 256 B.R. at 404.  Section 1126(g) of the Bankruptcy Code provides that impaired classes

that neither receive nor retain property under the plan are deemed to have rejected the plan.  11

U.S.C. § 1126(g); see also In re Am. Family Enters., 256 B.R. at 404.

Applying these standards here, Classes 1 and 2 are unimpaired under the Plan and

are, therefore, deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

Classes 3, 4 and 5 are impaired under the Plan.  Classes 3 and 4 have each accepted the Plan and,

therefore, as to such Classes, section 1129(a)(8) of the Bankruptcy Code is satisfied.  Class 5 will

receive no distribution under the Plan and is, therefore, deemed to have rejected the Plan under

section 1126(g) of the Bankruptcy Code.  Therefore, section 1129(a)(8) cannot be satisfied as to

Class 5 and requires application of section 1129(b) of the Bankruptcy Code.  However, as is

more fully discussed below, the Plan satisfies the cramdown requirements of section 1129(b) of

the Bankruptcy Code with respect to Class 5 and can still be confirmed notwithstanding the

deemed rejection of the Plan by Class 5.

9.    **The Treatment of Administrative Claims, Priority Claims and Priority Tax Claims Under the Plan Complies with Section 1129(a)(9) of the Bankruptcy Code**

Section 1129(a)(9) of the Bankruptcy Code provides as follows:

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that —

(A)    with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B)    with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive —

(i)    if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii)    if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(C)    with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9).  Thus, under section 1129(a)(9), unless the holder of a particular claim agrees to different treatment, persons holding claims entitled to priority under section 507(a) of the Bankruptcy Code must receive cash or cash payments under the plan.  See id.  In accordance with section 1129(a)(9) of the Bankruptcy Code, Sections II.A.1, A.2 and C.1 of the Plan provide that (a) each holder of an Allowed Administrative Claim will (i) be paid the full amount of such Allowed Administrative Claim, in Cash, on the later of the Effective Date and the date upon

30

which such Administrative Claim becomes an Allowed Claim; (ii) be paid upon such other terms

as may be agreed upon between such holder and the Debtor or upon Order of the Bankruptcy

Court; or (iii) be paid in accordance with the ordinary business terms with respect to payment of

such Allowed Administrative Claims; (b) unless otherwise agreed by the holder of an Allowed

Priority Tax Claim (in which event such other agreement shall govern), each holder of an

Allowed Priority Tax Claim against the Debtor shall receive, on the later of the Effective Date

and the date on which such Priority Tax Claim is Allowed, Cash equal to the amount of such

Allowed Priority Tax Claim; and (c) on the later of the Effective Date and a date as soon as

practicable after a Priority Claim becomes an Allowed Priority Claim, each Allowed Priority

Claim will be paid in full in Cash (except to the extent the holder of any such Claim agrees to a

different treatment) from the Administrative and Priority Reserve.  Therefore, the treatment of

Administrative Claims, Priority Tax Claims and Priority Claims under the Plan satisfies the

requirements of section 1129(a)(9) of the Bankruptcy Code.

**10.    The Plan Has Been Accepted by at Least One Impaired Class and
Satisfies the Requirements of Section 1129(a)(10) of the Bankruptcy Code**

Section 1129(a)(10) requires that "at least one class of claims that is impaired

under the plan has accepted the plan, determined without including any acceptance of the plan by

any insider."  11 U.S.C. § 1129(a)(10); see also In re Drexel Burnham Lambert Group, Inc., 138

B.R. at 761; In re Martin, 66 B.R. 921, 924 (Bankr. D. Mont. 1986) (where three classes of

impaired creditors accepted plan, exclusive of insiders, requirement of section 1129(a)(10) was

satisfied).  Here, both Classes 3 and 4, each of which is impaired under the Plan, have accepted

the Plan, without including the accepting votes of insiders.  Therefore, the requirements of

section 1129(a)(10) of the Bankruptcy Code have been satisfied.

**11.    The Plan Is Feasible and Complies with the Requirements of Section 1129(a)(11) of the Bankruptcy Code**

Pursuant to section 1129(a)(11) of the Bankruptcy Code, a plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).

A key element of feasibility is whether there exists the reasonable probability that the provisions of the plan can be performed.  See In re Cellular Info. Sys., Inc., 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) (quoting Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.), 755 F.2d 1336, 1341 (8th Cir. 1985)) ("A Bankruptcy Court, in determining the feasibility of a proposed plan of reorganization, should scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable."); Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson), 767 F.2d 417, 420 (8th Cir. 1985) ("the feasibility test contemplates the probability of actual performance of the provisions of the plan . . . .  The test is whether the things which are to be done after confirmation can be done as a practical matter . . . .") (citing Chase Manhattan Mortgage & Realty Trust v. Bergman (In re Bergman), 585 F.2d 1171, 1179 (2d Cir. 1978)); In re Am. Family Enters., 256 B.R. at 404 (observing that one of the determinations under the feasibility test is a finding that the debtor will be able to make all payments under and comply with the provisions of the plan); In re Eddington Thread Mfg. Co., Inc., 181 B.R. 826, 833 (Bankr. E.D. Pa. 1995) (noting that "it is clear that there is a relatively low threshold of proof necessary to satisfy the feasibility requirement" and that a plan satisfies such requirement if there is a reasonable prospect for success and a reasonable assurance that the proponents can comply with its terms).

Here, the Plan contemplates the liquidation of the Debtor.  All of the Debtor's valuable assets have been, or will be, sold.  Thus, no further restructuring of the Debtor will be necessary.  Based upon information contained in the Disclosure Statement, the Debtor submits that the Creditor Trust should be able to satisfy all obligations under the Plan.  Significantly, the Debtor believes that adequate funds will exist, on the Effective Date of the Plan, (i) to satisfy payments due to the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims and Allowed Convenience Claims, (ii) to make the initial distribution to the holders of Class 3 Claims, and (iii) to fund the Creditor Trust.  Thus, because the Plan is workable, has a reasonable likelihood of success and provides for the liquidation of the Debtor, the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code is satisfied.

### 12. The Plan Provides for the Payment of All Statutory Fees and Complies with Section 1129(a)(12) of the Bankruptcy Code

Section 1129(a)(12) of the Bankruptcy Code requires that either all fees payable under section 1930, title 28, United States Code, as determined by the Court at the hearing on confirmation of the plan, have been paid or that the plan provide for the payment of all such fees on the effective date of the plan.  See 11 U.S.C. § 1129(a)(12).  Section X.F of the Plan provides that "[a]ll fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date" and that "[t]he Creditor Trustee shall pay fees that accrue under section 1930 of title 28 until a Final Decree is entered in this case, or the Court otherwise orders, out of the Administrative and Priority Reserve."  Therefore, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

13.    **The Plan Need Not Provide for Continuation of Payment of Any Retiree Benefits Under Section 1129(a)(13) of the Bankruptcy Code**

Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide "for the continuation after its effective date of payment of all retiree benefits . . . for the duration of the period the debtor has obligated itself to provide such benefits." 11 U.S.C. § 1129(a)(13). There are no retiree benefits to be continued by the Debtor as to any current or former employees. Therefore, section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan.

B.    **The Plan Satisfies the Requirements for Cramdown Under Section 1129(b) of the Bankruptcy Code with Respect to Class 5 Interests**

Section 1129(b) of the Bankruptcy Code, known as the "cramdown" provision, provides a mechanism for the confirmation of a plan even if the plan is not accepted by all impaired classes of claims and interests. Specifically, section 1129(b)(1) provides as follows:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph <u>if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan</u>.

11 U.S.C. § 1129(b)(1)(emphasis added). Thus, under section 1129(b), the Court may "cramdown" a plan over the dissenting vote of an impaired class or classes of claims or interests if all the provisions of section 1129(a) and (b) are met, other than section 1129(a)(8), as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the dissenting class or classes of claims or interests. <u>See</u> <u>In re Cellular Info. Sys., Inc.</u>, 171 B.R. at 937; <u>see also</u> <u>Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)</u>, 150 F.3d 503, 519 (5th Cir. 1998), <u>cert</u>. <u>denied</u>, 526 U.S. 1144 (1999); <u>Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)</u>, 115 F.3d 650, 653 (9th Cir. 1997), <u>cert</u>.

34

denied, 522 U.S. 1110 (1998); John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.,

987 F.2d 154, 157 n.5 (3d Cir. 1993); In re Zenith Elecs., Corp., 241 B.R. at 105 (explaining that

"[w]here a class of creditors or shareholders has not accepted a plan of reorganization, the court

shall nonetheless confirm the plan if it does not discriminate unfairly and is fair and equitable").

As discussed above, holders of Class 5 Interests (Interests in the Debtor) will

receive no distribution under the Plan and are deemed to have rejected the Plan under § 1126(g)

of the Bankruptcy Code.  Therefore, the Plan does not meet the requirements of section

1129(a)(8) of the Bankruptcy Code.  Accordingly, the Debtor requests confirmation of the Plan

under section 1129(b) of the Bankruptcy Code as to Class 5.

### 1.    The Plan Does Not Discriminate Unfairly Against Class 5 Interests

Section 1129(b)(1) of the Bankruptcy Code requires that a plan "not discriminate

unfairly" and be "fair and equitable, with respect to each class of claims or interests that is

impaired under, and has not accepted, the plan."  11 U.S.C. § 1129(b)(1).  The Bankruptcy Code

does not provide a standard for determining when "unfair discrimination" exists.  See In re

Greate Bay Hotel & Casino, Inc., 251 B.R. at 228 (noting that the concept of "unfair

discrimination" is not defined under the Bankruptcy Code); In re 203 N. LaSalle St. Ltd. P'ship,

190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), aff'd, 195 B.R. 692 (N.D. Ill. 1996), aff'd, 126 F.3d

955 (7th Cir. 1997), rev'd on other grounds, 526 U.S. 434 (1999) (noting "the lack of any clear

standard for determining the fairness of a discrimination in the treatment of classes under a

Chapter 11 plan" and that "the limits of fairness in this context have not been established.").

Rather, courts typically examine the facts and circumstances of the particular case

to determine whether unfair discrimination exists.  See, e.g., In re Freymiller Trucking, Inc., 190

B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination

requires a court to "consider all aspects of the case and the totality of all the circumstances"); In re Aztec Co., 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) (noting that courts "have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination").  At a minimum, however, the unfair discrimination standard prevents creditors and interest holders with similar legal rights from receiving materially different treatment under a proposed plan without compelling justification for doing so.  See In re Ambanc La Mesa Ltd. P'ship, 115 F.3d at 656; In re Aztec Co., 107 B.R. at 589-91.  Many courts have held that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if similar claims are treated differently without a reasonable basis for the disparate treatment, or a class of claims receives consideration of a value that is greater than the amount of its allowed claims.  See, e.g., In re Buttonwood Partners, Ltd., 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); In re Johns-Manville Corp., 68 B.R. at 618 (because equity interest are unlike interests of claim holders, they may be accorded different treatment); In re Future Energy Corp., 83 B.R. at 492-93.

Based upon the foregoing standards, the Plan does not discriminate unfairly with respect to Class 5.  Class 5 is comprised of all Interests against the Debtor and there are no other classes of similarly situated Interests that are receiving a distribution under the Plan.  Moreover, no class of claims is to receive consideration in an amount in excess of the amount of its Allowed Claims.

2.      **The Plan is Fair and Equitable with Respect to Class 5 Interests**

Section 1129(b)(2) of the Bankruptcy Code sets forth requirements for determining whether a Plan is "fair and equitable."  See 11 U.S.C. § 1129(b)(2).

With respect to interests, section 1129(b)(2)(C) provides as follows:

(i) each holder of an equity interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of the interest; or

(ii) the holder of an interest that is junior to the interests of such class will not receive or retain any property under the plan on account of such junior interest in property.

11 U.S.C. § 1129(b)(2)(C).

Here, the "fair and equitable" requirement is satisfied as to each holder of a Class 5 Interest. Specifically, there is no holder of an Interest junior to Class 5 which is to receive or retain any property on account of such junior Interest and the holders of such Interests are not entitled to any fixed liquidation preference or fixed redemption value. Therefore, the Plan is fair and equitable with respect to Class 5 and satisfies section 1129(b) of the Bankruptcy Code.

Based on the foregoing, the Plan satisfies the "cramdown" requirements of Section 1129(b) because the Plan does not discriminate unfairly and is fair and equitable with respect to the treatment of Class 5 Interests. Therefore, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code and should be confirmed notwithstanding the failure of the Plan to satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code.

### III.   THE WAGNER OBJECTION SHOULD BE OVERRULED IN ITS ENTIRETY

Although styled as an objection to confirmation, the Wagner Objection is nothing more than an attempt by Mr. Wagner to obtain relief from this Court's prior ruling authorizing the Committee to pursue causes of action against Mr. Wagner as of the Confirmation Date and thereby to forestall, if not foreclose, potential litigation against Mr. Wagner personally. The Wagner Objection suggests that the Plan cannot be confirmed because it "contemplates the pursuit of an action against Wagner that is not authorized by law". Wagner Obj., ¶5. By this,

Mr. Wagner is referring to the ability of the Creditor Trustee, the Estate's representative on a

going forward basis, to pursue causes of action against Mr. Wagner as of Confirmation.  It is

absolutely common in chapter 11 proceedings, and even more so in liquidating chapter 11

proceedings, for the Debtor to cede authority to pursue claims and causes of action to a creditor

representative on behalf of the Estate.  This is exactly what is contemplated by the Plan as to all

Estate claims and causes of action – against all third parties – as of the Effective Date.  The only

difference in Mr. Wagner's case is that such authority will be granted effective as of the

Confirmation Date, rather than the Effective Date.  This timing difference is the result of the

Court's express ruling on the Application (as defined in the Wagner Objection).  Apparently, Mr.

Wagner seeks to accomplish through a confirmation objection what he was unable to accomplish

through his objection to the Application.  This attempt must fail:  the Court has already properly

granted authority to the Committee to pursue claims against Mr. Wagner and section 1129

provides no basis to deny confirmation as a result.

Although the Wagner Objection clearly must be viewed in light of its principal

objective – shielding Mr. Wagner from future litigation – the objection does raise three issues

that are not related to Mr. Wagner's own, personal interests.  First, the Wagner Objection raises a

concern that the Plan contemplates a discharge of the Debtor in violation of section 1141 of the

Bankruptcy Code.  This issue has been addressed in a revision to the Plan that contains language

achieved in consultation with a representative of the Office of the United States Trustee for the

Southern District of New York (the "UST").  A copy of the revised Plan is being filed

concurrently herewith.

Second, the Wagner Objection criticizes the Plan's release of non-debtor third

parties.  Again, in consultation with the UST, revisions have been made to Section VI.I. of the

Plan to significantly narrow the scope of the releases contemplated by the Plan.  The releases, as

modified, are necessary and appropriate in the context of this liquidating Plan to ensure that

individuals who have undertaken to maximize the value of the Estate are not hereafter caught up

in frivolous litigation.  The revised language, as approved by the UST, is attached as part of the

modified Plan discussed above.

Third, the Wagner Objection suggests that a chapter 7 liquidation would be

preferable to the chapter 11 liquidation contemplated by the Plan.  The Debtor and the

Committee strongly disagree with this proposition.  As set forth above, the Debtor and the

Committee have invested significant resources to maximize value to the Estate, selling virtually

all of the Debtor's "hard" assets for significant value in the short six month period during which

the chapter 11 has been pending – all of which value directly benefits creditors of the Debtor.  At

this time, the Debtor remains in discussions with parties regarding the sale (or sales) of the

Debtor's intellectual property, with the hope of obtaining additional value for the Estate.  It is the

belief of the Debtor and the Committee that potential sales might well be lost if those discussions

were suddenly turned over to a new, third party representative of the Debtor.  The only additional

asset of the Debtor is the recovery of amounts owing to the Debtor in the form of the collection

of receivables – much of which has already been completed – and the pursuit of Bankruptcy

Actions.  On this last item, the Debtor and the Committee believe that there may be significant

amounts recoverable for the benefit of the Estate, and the Committee already has invested a

significant amount of time and effort investigating potential Bankruptcy Actions.  For example,

in the context of the single largest claim against the Debtor – made by Intuit, which is also a

potential defendant on a significant Bankruptcy Action – the Committee has already engaged in

preliminary discussions with counsel for Intuit and has reviewed thousands of documents in

anticipation of the filing of a complaint.  In a chapter 7 liquidation, a trustee would spend wholly duplicative time and effort pursuing these Assets, resulting in a net harm to creditors.  Finally, creditors as a whole will be benefited to the extent that frivolous or excessive claims are disallowed or reduced.  Once again the Committee has spent a significant amount of time and effort with the Debtor analyzing filed and scheduled claims, reviewing invoices and contracts and, most recently, preparing and filing substantive objections to certain of the larger claims. This knowledge and hard work would have to be duplicated by a trustee and its professionals, at great cost to the estate, or would be abandoned, resulting in a few creditors – those who have filed what the Debtor and the Committee believe to be frivolous claims exceeding $70,000,000 in the aggregate – obtaining recoveries on such claims to the substantial detriment of the vast majority of creditors.

The Wagner Objection is nothing more than a means of pursuing an individual agenda through the guise of section 1129 of the Bankruptcy Code.  Because the issues raised by the Wagner Objection either have been addressed or are wholly without merit, the Wagner Objection should be overruled in its entirety.

## IV.    <u>CONCLUSION</u>

The Plan was proposed with the support of the Committee and was accepted by an overwhelming majority of the holders of Class 3 and Class 4 Claims.  Furthermore, the Plan satisfies the confirmation standards set forth in sections 1122, 1123 and 1129 of the Bankruptcy Code.  Accordingly, the Debtor respectfully requests that this Court enter an Order confirming the Plan and grant such other or further relief as is just and proper.

Dated: New York, New York
           November __, 2001

                                        SIDLEY AUSTIN BROWN & WOOD

                                        By:    /s/ Lee S. Attanasio
                                               Lee S. Attanasio (LA-3054)
                                               Lance A. Schildkraut (LS-9350)
                                               875 Third Avenue
                                               New York, New York 10022
                                               (212) 906-2000

                                               Guy S. Neal
                                               SIDLEY AUSTIN BROWN & WOOD LLP
                                               1501 K Street NW
                                               Washington, D.C.  20005
                                               (202) 736-8000

                                        Counsel for Mçtiom, Inc., Debtor and Debtor-in-
                                               Possession

                                        OLSHAN GRUNDMAN FROME ROSENZWEIG
                                               & WOLOSKY LLP

                                        By:     /s/ Andrew I. Silfen
                                               Andrew I. Silfen (AS-1264)
                                               Schuyler G. Carroll (SC-0100)
                                               808 Park Avenue
                                               New York, New York 10022
                                               (212) 753-7200

                                        Counsel for Official Committee of Unsecured
                                               Creditors

NY1 5074205v3